Zurich General Accident & Liability Insurance Co., Ltd., Respondent, *v.* Childs Company, Appellant.

First Department, November 1, 1929.

*Walter L. Glenney* of counsel [*Chester H. Lane* with him on the brief; *Pettigrew & Glenney*, attorneys], for the appellant.

*Herbert B. Lee* of counsel [*Harold S. Lyon* with him on the brief; *Lyon & Smith*, attorneys], for the respondent.

McAvoy, J.    Plaintiff had a judgment in this action after a jury trial.    The action was brought under section 29 of the Workmen's Compensation Law, which allows a right of subrogation to an insurance carrier upon the making of an award by the Industrial Commission to an injured person.

The employee was injured while delivering fish for his employer to a Childs restaurant in Albany, N. Y., and the damages sought are those incurred by reason of the injuries sustained and the expenses brought about for hospital, medical and other necessary treatment.

The fish was delivered on January 11, 1924, through a sidewalk elevator which ran into the basement, and which elevator was operated by a cable for ascending, and a pull-ring for descending. The day that Bellville was hurt he found the sidewalk elevator doors open, and the platform at the bottom of the shaft.    He rang the bell, which was in the front wall, and, in response, an employee of defendant called up, asking who was there, and, when informed, "the fishman," said, "All right," and pulled the cable starting the elevator up.    He then walked away and went into the boiler room. The elevator came to a stop without any mechanical interference about three and one-half feet below the level of the sidewalk and nine inches below the top of the doorway which led into the cellar from the shaft.

The injured man said that on other occasions, while delivering fish, the elevator had stopped of its own accord at about the same place and in the same manner. He informed the defendant's employee of this defective stopping. The employee said that he had reported it and could do no more and told Bellville when the car stopped to jump down on the elevator, grasp the overhead bow, and shake it from side to side, in order to make it go down. Bellville had followed this instruction on several occasions when the elevator stopped, and the day he was hurt one Heinze stood on the sidewalk talking to Bellville. Heinze noticed that the elevator stopped part way up on this occasion and on one other occasion.

After Heinze left, Bellville laid the fish basket on the sidewalk, bent over and jumped down on the elevator, intending to pull the ring and chain on the platform, shake the elevator, and start it down to the cellar as he had previously done. As he struck the elevator platform his foot slipped, and at the same instant the elevator started up. In slipping his foot was thrust beyond the edge of the platform into the cellar opening, and was crushed by the ascending platform at the top of the doorway. The elevator then stopped of its own accord.

Afterward the elevator was moved so that it descended to the cellar level, where Bellville was taken off the elevator.

His foot was almost severed. He remained in the hospital for seven months, and it finally became necessary to amputate the leg below the knee. As the result of the accident his left knee is permanently rigid and stiff.

The negligence of the defendant is predicated by plaintiff on the theory that the elevator stopping midway on this and other occasions showed that the machinery was out of order, and defendant knew it. It also is asserted that it was negligence on defendant's part to fail to obtain a permit to erect the elevator under the city ordinance of Albany, and thus subject it to the inspection of the city authorities as required, and in permitting the dangerous condition of the elevator to exist at the time of the accident, which an inspection would have revealed.

It is claimed that Bellville was free of contributory negligence, because he always rode on the platform each time he delivered fish, under instructions of the defendant, and that in jumping upon it to start it he used due care and caution, and followed this practice because he was instructed to do so.

The appellant claims on the merits that there was no negligence shown; that the proof showed that the elevator was new and in perfect running order; that it never before and did not on this occasion stop part way up the shaft; that Bellville was not per-

mitted to ride on the elevator; that he had never been invited to get on the elevator, but had been repeatedly told to stay off. It was the defendant's contention that the accident happened because of Bellville's impatience in not waiting for the elevator to reach the sidewalk; that he attempted to jump down from the sidewalk to the elevator platform in order to save time by pulling the ring and reversing the direction of the elevator, and in so doing slipped and fell, and his foot was caught as described.

The day was raw and rainy, in January.

As to the failure to obtain a permit, the defendant contended that no permit was necessary; that the elevator was shown on the building plans filed with the city; that the city officials had full knowledge of the existence of the elevator, and that the lack of any permit was not in any way the proximate cause of the accident.

The court permitted the jury to determine whether the failure to obtain a permit may have prevented the city from discovering a defect in the elevator, so that it would have required the defendant to remove the defect.

It seems to us that, as a matter of law, the risks of the situation were shown to have been known to Bellville, and his conduct on the occasion of the injury indicated that they were assumed by him, and such assumption of the risk constituted a complete defense to the action. Any defense here which would have defeated Bellville had he been plaintiff is a defense which would defeat the plaintiff insurer in this action.

Bellville claims that on a dozen previous occasions he used the elevator, and it would stop when half way up; that he spoke to the elevatorman about it and was told that the defendant's officials were notified but that nothing had been done; that he spoke of this condition three or four times; that on one occasion he had been instructed by the man in the cellar to jump on it and shake it, and that having done so the elevator started; that it had previously stopped just at the point where Bellville was hurt, but that his jumping on it would start it; that when he was injured he had called to the man in the cellar to pull it up; that it had reached a point where the platform was nine inches below the top of the opening that led to the basement, and three or four feet below the sidewalk level; that it stopped at this point on previous occasions; he knew at the time that it was raining and that the platform must be wet, as the doors were opened from the sidewalk. Notwithstanding these facts he jumped three or four feet to the platform, without holding on or trying to hold on to anything with his hands, although the elevator seemed to be greasy from assorted provisions that had been taken on previously. He must, therefore, be charged

with knowledge that if his foot struck the platform he might slip and fall. He also knew that if he fell on the platform the elevator would start up again as it had on previous occasions when he shook it, the cable having last been pulled in an upward direction. All the risks were obvious and open. There was no hidden defect of which the injured man did not know. His attempt to operate the elevator in the manner described and his slipping and falling, with resulting injury, were the acts which were the proximate cause of his injury, and constituted the actual negligence which caused the damage.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

DOWLING, P. J., MERRELL, FINCH and PROSKAUER, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.